HURST, C. J., and RILEY, BAYLESS, WELCH, CORN, GIBSON, and LUT-TRELL, JJ., concur. ARNOLD, J., dissents.

CLARKSON v. VAN ANTWERP et al.

No. 33163.  Oct. 26, 1948.

*200 P. 2d 442.*

Spillers, Spillers & Voorhees, of Tulsa, for plaintiff in error.

S. J. Clendinning, of Tulsa, for defendants in error.

DAVISON, V.C.J.  This is a companion case to that of Fite v. Van Antwerp, 201 Okla. 26, 200 P. 2d 439.

By stipulation of the parties the decision in that case is determinative of the questions herein.

The judgment of the trial court is, therefore, affirmed.

HURST, C. J., and RILEY, BAYLESS, WELCH, CORN, GIBSON, and LUT-TRELL, JJ., concur. ARNOLD, J., dissents.

LIBERTY CENTRAL TRUST CO. et al. v. METHODIST EPISCOPAL CHURCH OF BROKEN ARROW et al.

No. 33162.  Oct. 26, 1948.

Rehearing Denied Dec. 7, 1948.

*200 P. 2d 424.*

30

John W. Giesecke, of St. Louis, Mo., and Rosenstein, Fist & Shidler and M. F. Ellison, all of Tulsa, for plaintiffs in error.

F. A. Petrik, of Broken Arrow, and Guy S. Manatt and E. M. Knight, both of Tulsa, for defendants in error.

GIBSON, J. This is an action brought by Liberty Central Trust Company, a corporation, and Fred Krone against Methodist Episcopal Church of Broken Arrow, Oklahoma, a corporation, and others, to recover judgment on a series of bonds secured by mortgage, and for foreclosure of the lien thereof. On demurrer interposed to plaintiffs' evidence, the court determined that the action was barred by the statute of limitations. Defendants appealed. For convenience the parties will be referred to as they appeared in the trial court.

On September 1, 1925, the defendant Methodist Episcopal Church of Broken Arrow, a corporate body, through its officers and trustees, issued its thirty-eight $500 bonds, bearing 6% interest. Two of said bonds became due each year thereafter until September 1, 1935, when the last twenty became due. On

even date the defendants executed to the plaintiffs a mortgage upon its church property to secure the payment of the bonds. The defendants paid the four bonds due in 1926 and 1927 together with interest on the other bonds but defaulted in the payment of both the principal and interest of the remainder of the indebtedness.

This action was instituted on March 7, 1942, and it was agreed at the trial that the action would have been barred after September 1, 1940, unless the statute was tolled by the acts of defendants.

Plaintiffs, in an effort to prove that the statute was tolled, offered in evidence minutes of meetings of the Quarterly Conferences of the church held October 10, 1937, and August 4, 1939, a letter of the church treasurer dated June 21, 1939, addressed to agent of bondholders, seven letters written at intervals during 1937 and 1938 by Francis M. Simpson, the church pastor, six to such agent and one to the plaintiffs, and two letters to such agent written by John R. Webb, succeeding pastor, one in August 1939, and the other in February 1940.

The substance of the minutes of the first of the Conference meetings was the adoption of a motion authorizing the Board of Trustees to enter into negotiations with the bondholders or their agents for the purpose of paying off the bonded indebtedness on the basis of ten cents per dollar of the principal sum thereof, and to settle same on that basis upon delivery of release of the mortgage. The minutes of the meeting of August 4, 1939, reflect that said Board of Trustees was thereby authorized to accept donations and borrow money, not exceeding $1,000 to be secured by mortgage on the church property, for the purpose of liquidating said indebtedness.

The letter of the treasurer addressed to agent of bondholders recited that at a meeting of the Board it was decided

to write and inquire whether it would be possible to have all of the bonds placed in escrow. The reason given therefor being that the Board thought that contributors would give more freely if they knew the bonds were in the bank and hence solicitors could more easily get the required amount for the settlement.

Concerning the letters of the pastors, other than the one of February 13, 1940, which we will consider more specifically, in view of the emphasis placed upon it, it is sufficient to say they merely deal with the need for adjustment of the indebtedness by reason of existing conditions, the preference of paying off the mortgage instead of renewing it as requested by the plaintiff, the fairness of 10% of the principal thereof as basis for settlement in view of the greatly depreciated value of the mortgaged premises as security, the advantage to be gained in the solicitation of funds by having the bonds placed in escrow pending the solicitation, and the hitch in the settlement caused by the unwillingness of one bondholder to settle on the 10% basis and the proposed disposition thereof. The letter of February 13, 1940, omitting the date, is as follows:

"D'Oench, Duhme & Co.,
"315 N. Seventh,
"St. Louis, Mo.
"Dear Sirs:

"The Official Board of the First Methodist Church in a regular meeting has ordered me to write you stating that this church will redeem the outstanding bonds against this property at a figure not to exceed ten cents on each dollar according to a foregone agreement with said bond-holders, with the exception of two five-hundred dollar bonds held by the bank in New Athens, Illinois. We feel that in view of the low figure upon which settlement is agreed by all bondholders except this bank, that we should not offer them more than that which the remainder will get. It is not fair. However, at your suggestion, we shall try to raise them 20c on the dollar.

"The Board has again instructed me to request that you place all bonds en escrow in the First National Bank, Broken Arrow, Oklahoma.

"After they all have been received we shall begin the intensive effort to raise this sum.

"Hoping for an early reception of all of the bonds.

"Kindly
"(John R. Webb)
"John R. Webb, minister."

There is not in evidence any record of an official act of the corporation or act of a corporate official touching the subject matter, and the only evidence that the quoted letter is an authoritative expression of the Board of Trustees is the testimony of the writer that he thought the Board authorized him to write it.

It is urged that in light of this evidence the court erred in sustaining the demurrer to the evidence.

The controlling statute, 12 O. S. 1941 §101, provides:

"In any case founded on contract, when any part of the principal or interest shall have been paid, or an acknowledgment of an existing liability, debt or claim, or any promise to pay the same shall have been made, an action may be brought in such case within the period prescribed for the same, after such payment, acknowledgment or promise; but such acknowledgment or promise must be in writing, signed by the party to be charged thereby."

Under the facts, in order to invoke the statute, it must appear there was an acknowledgment of the debt in writing, signed by the party to be charged thereby. This involves two things: whether the purported acknowledgment is sufficient in point of law as such, and the other whether the writing is, or is tantamount to, the act of the debtor. The absence of either would render the statute inoperative.

As to the authority of the authors of the letters to speak for the Board, it

32

is recognized that there is no evidence of official action delegating such power to the authors, but it is contended that since it appears that the official records were not obtainable, resort to such evidence as might be available should be permitted, and therefore the testimony of Mr. Webb concerning his authority to write the letter of February 13, 1940, adequate therefor. There can be no merit in this contention. Even if the circumstances were such as to justify a resort to secondary evidence it could not be held that such testimony is sufficient. To be sufficient, such evidence would have to prove the fact of some corporate act the legal effect of which would be to grant the authority. The testimony goes merely to the conclusion of the witness which, so far as indicated, was reached without reference to any corporate action. That the one relying upon the fact of agency must establish same by competent evidence is beyond question. 1 Mechem on Agency (2d Ed.) 213, §293; 2 Am. Jur. 359, §454; 3 C. J. S. Agency, 252, §315; Incorporated Town of Locust Grove v. Faull, 174 Okla. 466, 50 P. 2d 1122.

In plaintiffs' reply brief it is urged that under the circumstances it would be inequitable to not accord to the letters corporate authorization and that defendants should not be permitted to deny the existence of corporate authority in the writers of the letters. The cases cited in support thereof present no parallel in fact to the instant case and there are no facts in this case that bring same within the principles therein pronounced.

Since there is no competent evidence of authority in the writers of the letters to make, on behalf of the corporate entity, a written acknowledgment of the indebtedness, such as is contemplated by statute, it follows the running of the statute was not tolled. And such being decisive of the appeal there is no need to discuss the question of the sufficiency of the letters to constitute a recognition of the indebtedness.

Judgment affirmed.

HURST, C. J., and RILEY, BAYLESS, WELCH, CORN, ARNOLD, and LUTTRELL, JJ., concur.