Herman WHEELER, Appellee,

v.

**PURITAN INSURANCE COMPANY, Appellant.**

No. 55936.

Supreme Court of Oklahoma.

June 17, 1986.

S. Daniel George, S. Daniel George, Inc., Sallisaw, for appellee.

Joseph A. Sharp, Patricia K. Lamb, Best, Sharp, Thomas, Glass & Atkinson, Tulsa, for appellant.

HARGRAVE, Justice.

The issue presented here is whether there is sufficient evidence to submit the issue of agency and apparent authority of one insurance salesman (Stewart) to bind an insurance contract for Puritan Insurance Company (defendant). Puritan contends there is no evidence tending to establish agency and therefore no evidence upon which to base a finding that Stewart had the apparent authority to bind Puritan upon completion of an application for insurance.

On October 10, 1978 Wheeler and his wife went to the Stewart Insurance Agency

in Sallisaw, Oklahoma, in order to buy fire insurance for their mobile home and its contents. Wheeler spoke with Stewart, a partner in the Agency. An application provided by Stewart was filled out and Wheeler then made a partial payment on the premium, for which Stewart provided a receipt. Wheeler testified that Stewart informed him that "as quick as I (Stewart) write this receipt out and accept your (Wheeler) money, you will be covered". The application was not sent to any company by Stewart.

On October 15, 1978 a fire destroyed the mobile home and its contents. When informed of the fire and the resulting loss, Stewart told Wheeler that the loss was not covered. Wheeler then brought the present action against Puritan to recover for the loss of the mobile home and its contents. A jury decided in favor of Wheeler and awarded Wheeler $8,500. Puritan timely appealed from the judgment of the District Court.

Mr. Stewart testified that:

1. Stewart Insurance Agency is a partnership consisting of Stewart and his mother, Wanda Stewart;

2. Stewart is affiliated with and has binding authority for Oklahoma Farmers Union and National Farmers Union;

3. There was no contractual relationship between Stewart and Puritan;

4. Stewart was not appointed as an agent for Puritan and Puritan had never given him any reason to think he could bind Puritan;

5. There were no signs or literature or paraphernalia in Stewart's office of Puritan; and

6. Wheeler's application does not contain the name of any company and Wheeler's application form was provided to Stewart by Farmers Union.

Mr. Bogner, Operations Manager for Puritan, testified that Stewart was not an agent of Puritan, there was no direct relationship between Puritan and Stewart and Wheeler's application was not Puritan's form.

Stewart testified that Oklahoma Farmers Union has a surplus brokerage department which supplies applications for types of insurance which Oklahoma Farmers Union would not write, such as on mobile homes, and such applications are sent to Oklahoma General Agency which sends such applications to the issuing insurance company. Oklahoma General Agency is an agent for Puritan, according to the testimony of Stewart and Bogner.

Stewart testified that, with respect to mobile homes, he could take applications for different insurance companies, including Puritan, some of the criteria used in determining to which of these insurance companies such application would be sent would be the location of the mobile home and the rate, and, with respect to Wheeler's application, this application could have been sent to two insurance companies, Minnehoma or Puritan. With respect to Wheeler's applications, Stewart testified that he chose Puritan because of a lower rate.

Stewart also testified that he had taken applications on forms like Wheeler's application and, in the past when he sent in that particular application form, the policy came back issued from Puritan.

Stewart wrote a letter to Oklahoma General Agency dated October 23, 1978, shortly after Wheeler's fire. In this letter, Stewart stated that "proposed insured (Wheeler) came into the office with his wife, on 10/10/78, whereby we started an application with Puritan Insurance Company for coverage" on the mobile home.

Wheeler testified that he remembered Stewart "saying something about Puritan Insurance Company"; but, that he did not know whether or not his insurance was with Puritan, and with respect to his mobile home insurance, Wheeler testified "I don't know which one had it".

As noted previously Stewart testified he was not an agent for Puritan Insurance Company and Mr. Bogner, Operations Manager for Puritan, testified there was no direct relationship between Puritan and Stewart. The application form has no insurance company's name upon it. The

form was used to forward inquiries to Stewart's principal, Oklahoma Farmers Union, for placement in Oklahoma Farmers' surplus brokerage department for types of insurance Farmers would not write. The only agents in Oklahoma for Puritan are Tulsa General Agency and Oklahoma General Agency in Oklahoma City.

The transcript of the proceedings is totally devoid of any mention of a communication between the alleged principal, Puritan, and the third party, Wheeler. The record does state that Wheeler said that the insurance would be placed with Puritan. The Oklahoma Farmers Union application does not mention Puritan and none of the trappings of the insurance salesman's office mention Puritan.

▆▆▆ Apparent authority results from manifestations by the principal (here Puritan Insurance Company) to the third party (here Wheeler), that another person is his agent. *Stephens v. Yamaha Motor Company, Ltd., Japan,* 627 P.2d 439 (Okl.1981). Up to the time of the loss by reason of the fire there is no mention in the record of any communication, written or oral or by advertisement, that Stewart was an agent of Puritan. To establish that an agent has apparent authority to act, the principal must have manifested his consent to the exercise of such authority or have knowingly permitted the agent to act exercising that authority. Additionally, the third person must know the facts and, acting in good faith, have reason to believe, and also actually believe, the agent possessed that authority. *Institute for Business Planning, Inc. v. Standard Life and Accident Insurance Company,* 242 F.Supp. 100 (W.D.Okl.1965). The apparent authority of an agent is to be gathered from all the facts and circumstances in evidence. *Ivey v. Wood,* 387 P.2d 621 (Okl.1963). Here the record is simply devoid of any evidence of power to bind Puritan by filling out an insurance application, which does not even mention the name of the company. Apparent agency develops from the acts of the principal himself and not from the acts of the agent. *Anglo-American Clothing*

*Corp. v. Marjorie's of Tiburon, Inc.,* 571 P.2d 427 (Okl.1977). In the complete absence of any evidence of acts of the principal tending to induce a belief that the insurance salesman was his agent or possessed apparent authority to act for or bind the company, the judgment must be reversed as the trial court erred in refusing defendant's demurrer to the evidence and motion for a directed verdict and judgment non obstante veredicto.

Opinion of the Court of Appeals VACATED and judgment REVERSED.

SIMMS, C.J., and HODGES, LAVENDER, WILSON, KAUGER and SUMMERS, JJ., concur.

OPALA, J., dissents.